**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVEN SCAFFIDI** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4113** |
| **NEW ORLEANS MISSION, INC.** | **SECTION: "B"(5)** |

## ORDER AND REASONS

Before the Court are Defendant New Orleans Mission, Inc.'s ("NO Mission") Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 7) and Plaintiff Steven Scaffidi's ("Scaffidi") Response in Opposition (Rec. Doc. 15). For the reasons stated below,

**IT IS ORDERED** that NO Mission's Motion to Dismiss is **DISMISSED WITHOUT PREJUDICE,** after specified discovery, to reurge in the context of a summary judgment motion.

**FACTS AND PROCEDURAL HISTORY**

This is an employment discrimination case is which Plaintiff Steven Scaffidi alleges religious discrimination, harassment, hostile work environment, and retaliation. *See* Rec. Doc. 1. Scaffidi is of Catholic faith. *See* Rec. Doc. 15 at 1. From December 2015 to March 2017, he was employed as Director of Media, Marketing, and Development by Defendant NO Mission, Inc. *See* Rec. Doc. 7-1 at 1. NO Mission is a private Christian faith-based charitable non-profit Louisiana corporation. *See id.* at 6. It was

1

established to minister homeless and economically disadvantaged citizens. *See id*. at 6-7.

NO Mission claims that it terminated Scaffidi because there were theological differences between Scaffidi's Catholic beliefs and NO Mission's Evangelical beliefs. *See id*. at 2. Scaffidi claims that, throughout his employment, he was subjected to an unprecedented display of repeated, egregious, and unwelcomed harassment from NO Mission's management. *See* Rec. Doc. 15 at 1-3. It seems that the core problem was that Scaffidi disobeyed the request of NO Mission's senior management to refrain from promoting his Catholic based documentary, *The Sojourners*.[1] *See* Rec. Doc. 7-1 at 12. The content of the documentary is contradictory to NO Mission's Evangelic statement of faith and scriptural interpretation. *See id*. at 13.

On April 20, 2018, Scaffidi filed his complaint. *See* Rec. Doc. 1. On June 29, 2018, NO Mission filed its motion to dismiss for failure to state a claim upon which relief can be granted. *See* Rec. Doc. 7. Plaintiff filed his response in opposition. *See* Rec. Doc. 15. NO Mission did not seek leave to file a reply.

---

[1] NO Mission's Motion to Dismiss does not expand on how, when, or where Scaffidi was promoting his documentary. *See* Rec. Doc. 7-1 at 12. Scaffidi alleges in his Compliant that prior to his employment he provided No Mission's management with copies of his films, including *The Sojourners*. *See* Rec. Doc. 1 at 6. On March 10, 2017, NO Mission called a meeting to discuss Scaffidi's employment. In this meeting, NO Mission prayed in front of Scaffidi that he crush his film and his soul be saved. NO Mission also told Scaffidi to immediately remove the film from his website and never talk about his faith at NO Mission. *See id*. at 15.

2

**LAW AND ANALYSIS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks

3

omitted). Plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The Court must, in most instances, limit itself to the plaintiff's complaint, including its attachments. *See O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 413 (E.D. La. 2016). If a motion to dismiss presents exhibits outside of the pleadings that are not excluded by the court, the motion must be treated as a motion for summary judgment. *See id*.

Scaffidi alleged sufficient facts in his Complaint.[2] Scaffidi only attached the EECO Determination letter to his Complaint. *See* Rec. Doc. 15 at 11. NO Mission refences three other sources to support its motion to dismiss: its Articles of Incorporation and

---

[2] The actions of the [NO Mission's] leadership and other representatives over a fourteen (14) month period included, but were not limited to, the following intentional actions: Emailing Scaffidi articles entitled "Roman Catholicism: A Damning and False Religion. Complaint at ¶ 43; Emailing Scaffidi materials stating that the Roman Catholic Church is nothing more than a front for the kingdom of Satan. Complaint at ¶ 43; Instructing Scaffidi on how to "properly" enter the Kingdom of God. Complaint at ¶ 43; Emailing Scaffidi regarding the "Ten False Doctrines of the Roman Catholic Church" as well as video links attacking and condemning the Pope and the Papacy. Complaint at ¶ 43; Lecturing Scaffidi on how to properly pray using the "Word of God" and warning him that "[his] soul depends on it." Complaint at ¶ 44; Ridiculing, mocking, and condemning Scaffidi in a Mission staff meeting for baptizing his granddaughter in the Catholic faith. Complaint at ¶ 48; Stopping a meeting and warning Scaffidi that Catholic baptism was "against God" and "not in the Bible." Complaint at ¶ 48; Warning Scaffidi in front of co-workers that Catholic baptism "is a waste of time." Complaint at ¶ 48; Warning Scaffidi that he need "to understand fully what you defend or remain foolish you can't remain in ignorance about the truth" and attaching a video entitled "Catholicism – Overview of False Teaching." Complaint at ¶ 51; ●Repeatedly informing Scaffidi that Catholics were no "real Christians" and that Catholics like Scaffidi can only be "saved" if they become "true Christians." Complaint at ¶ 53; Referring to Scaffidi and his Catholic faith in a meeting as "demonic" and "disgusting." Complaint at ¶ 55; Praying in front of Scaffidi to save "his lost soul" and "to crush his films." Complaint at ¶ 55; and Issuing a four-point ultimatum to Scaffidi in order to keep his job including the Mission's demand to meet with his priest, leave the Catholic church, and publically renounce his faith. Complaint at ¶ 55. *See* Rec. Doc. 15.

4

Amended and Restated Articles of Incorporation; its website; and its response to LWC. *See* Rec. Doc. 7. At most, two of the three sources may be considered by the Court as part of NO Mission's Motion to Dismiss. *See Tucker v. Waffle House, Inc.*, 2013 U.S. Dist. LEXIS 52991 *1, *9 (E.D. La. 2013)(stating that public records and some EEOC documents can be considered without converting a motion to dismiss to a motion for summary judgment). However, this Court will not, at this juncture, convert this motion to dismiss to a motion for summary judgment.

In addition to pointing the Court to documents beyond the four corners of Scaffidi's complaint, NO Mission asks this Court to dismiss Scaffidi's claims on grounds that have yet to be established. Specifically, NO Mission self-proclaims that it is a bona fide religious organization and therefore protected as a matter of law by 42 U.S.C. §2000e-1(a), the religious organization exemption, from Scaffidi's claims of religious harassment, discrimination, and retaliation. *See id*.

Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or terminate any individual, or otherwise discriminate against any individual, because of the individual's religion. *See* 42 U.S.C. §2000e-2(a)(1). Title VII also makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice. *See* 42 U.S.C. §2000e-3(a).

5

Title VII contains exemptions applicable to religious organizations. *See* 42 U.S. C. §2000e-1(a). Specifically, in relevant part, the statute states that

> [Title VII] shall not apply to . . . a <u>religious corporation [or] association</u> . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities. *See id.* (emphasis added).

In the instant case, the parties dispute whether NO Mission is a religious organization and therefore qualifies for the 42 U.S.C. §2000e-1(a) exemption. The Fifth Circuit offers no specific guidance in regard to Title VII exemptions. *See Aguillard v. La. Coll.*, 341 F. Supp. 3d 642 (W.D. La. 2018). However, there is a collection of case law that is on point for this subject, and routinely used by other federal courts, including the U.S. District Court for the Western District of Louisiana. This Court relies on that collection of case law as well as other cases that it finds to be on point.

In each of these case, the court considers a number of factors to establish whether the defendant-entity was a religious organization. Although this is not a conclusive list, and not all factors must be met, courts consider the following factors: (a) whether the entity is supported and controlled by a religious corporation; (b) whether the entity was founded by sectarian persons or entities; (c) the atmosphere of the entity; (d) the

nature of the entity; (e) whether the entity's facilities are decorated with religious images; and (f) whether regular religious ceremonies and practice are observed. Furthermore, in each of these cases, the court established whether the entity was a religious organization at the summary judgment stage. *See, e.g.*, *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3rd Cir. 2007); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000); *Killinger v. Samford University*, 11 F.3d 196 (11th Cir. 1997); *Aguillard*, 341 F. Supp. 3d at 642; *Saeemodarae v. Mercy Health Services-Iowa Corp.*, 546 F.Supp.2d 1021 (N.D. Iowa 2006).

Therefore, like the court in *Saeemodarae*, the parties are directed to engage in discovery limited to investigate the applicability of the religious organization exemption and pertinent issues affecting its applicability to certain claims. 546 F.Supp.2d at 1024; *see also Spencer v. World Visions, Inc.*, 570 F. Supp. 2d 1279, 1281 (W.D. Wash. 2008).

New Orleans, Louisiana, this 20th day of March, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE