UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN SCAFFIDI     CIVIL ACTION

VERSUS     NO: 18-4113

NEW ORLEANS MISSION, INC.     SECTION: T (5)

## ORDER

Before the Court are Defendant New Orleans Mission, Inc.'s ("NO Mission") "Motion for Summary Judgment" (Rec. Doc. 51), and plaintiff Steven Scaffidi's ("Scaffidi") response in opposition (Rec. Doc. 52). For the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED.

## FACTS AND PROCEDURAL HISTORY

This is an employment discrimination case is which Plaintiff Steven Scaffidi alleges religious discrimination, harassment, hostile work environment, and retaliation. *See* Rec. Docs. 1 and 39. Scaffidi is of Catholic faith. *See* Rec. Doc. 15 at 1. From December 2015 to March 2017, he was employed as Director of Media, Marketing, and Development by Defendant NO Mission, Inc. *See* Rec. Doc. 7-1 at 1. NO Mission is a private Christian faith-based charitable non-profit Louisiana corporation. *See id.* at 6. It was established to minister homeless and economically disadvantaged citizens. *See id.* at 6-7.

NO Mission claims it terminated Scaffidi because there were theological differences between Scaffidi's Catholic beliefs and NO Mission's Evangelical beliefs. *See id.* at 2. Scaffidi claims that, throughout his employment, he was subjected to an unprecedented display of repeated,

1

egregious, and unwelcomed harassment from NO Mission's management. *See* Rec. Doc. 15 at 1-3. As this Court has previously noted, the core problem seems to be that Scaffidi disobeyed the request of NO Mission's senior management to refrain from promoting his Catholic-based documentary, *The Sojourners*. *See* Rec. Doc. 7-1 at 12; Rec. Doc. 39 at 2. The content of the documentary is allegedly contradictory to NO Mission's Evangelic statement of faith and scriptural interpretation.[1] *See* Rec. Doc. 7-1 at 13.

On April 20, 2018, Scaffidi filed his complaint. *See* Rec. Doc. 1. This Court previously denied NO Mission's Motion to Dismiss. *See* Rec. Doc. 39. NO Mission now seeks summary judgment on the grounds that NO Mission is a religious organization and thus shielded as a matter of law by the religious organization exemption from Plaintiff's Title VII claims of religious harassment, discrimination, and retaliation in the context of Plaintiff's employment with NO Mission. Rec. Doc. 51-2 at 1. Plaintiff contends there are numerous genuine issues of material fact that preclude summary judgment in NO Mission's favor. Rec. Doc. 52 at 1.

Thus, the issue presented to the Court is whether Defendant has established as a matter of law that NO Mission is a religious organization and therefore qualifies for the Religious Organization Exemption ("the Exemption") for claims arising under Title VII. 42 U.S.C. § 2000e-1(a). Unfortunately, as far as the Court can tell, the Fifth Circuit has yet to set forth specific

---

[1] NO Mission's Motion to Dismiss did not expand on how, when, or where Scaffidi was promoting his documentary. *See* Rec. Doc. 7-1 at 12. Scaffidi alleges in his Compliant that prior to his employment he provided NO Mission's management with copies of his films, including *The Sojourners*. *See* Rec. Doc. 1 at 6. On March 10, 2017, NO Mission called a meeting to discuss Scaffidi's employment. In this meeting, NO Mission prayed in front of Scaffidi that he crush his film and his soul be saved. NO Mission also told Scaffidi to immediately remove the film from his website and never talk about his faith at NO Mission. *See id.* at 15.

guidance for determining whether the Exemption applies in a particular case. *See Aguillard v. La. Coll.*, 341 F. Supp. 3d 642 (W.D. La. 2018).[2] The parties, with the Court's permission, have looked toward other jurisdictions regarding the applicability of the Exemption to the facts of the instant case. *See* Rec. Docs. 39, 51, & 52. However, this Court has made no determination as to the persuasiveness of the decisions of those other courts. Nevertheless, the Court will summarize the parties' contentions.

Defendant NO Mission contends summary judgment in its favor is proper, as the NO Mission is a religious organization and entitled to protection under the Exemption to Title VII. First, Defendant avers it is a religious organization within the meaning of the Exemption because NO Mission: (1) is a "private Christian faith-based 501(c)(3) charitable non-profit Louisiana corporation;" (2) was established "to minister to New Orleans' homeless and economically disadvantaged citizens; (3) has an "overarching importance of Christianity in [its] history, existence, and daily workings . . ."; (4) has "a nature and atmosphere . . . [that] are unequivocally religious"; (5) has "set clear expectations for all employees relative to matters of faith and conduct . . . [which] is made known at the outset of employment . . ."; (6) has Articles of incorporation that clearly state a religious purpose; (7) begins and concludes each meeting of the board of directors with prayer; (8) is a member of the Association of Gospel Rescue Missions, requiring member missions to be "religious organizations"; (9) engages in religious outreach activity on a weekly basis, including sixteen weekly chapel services, baptisms, and a "weekly radio program"; and (10) has a "statement of faith" that must be signed by every employee, prior to employment. Rec. Doc.

---

[2] An appeal to the Fifth Circuit Court of Appeals is pending in No. 19-30941.

51 at 5-10.

Second, Defendant contends the broad scope of the Exemption "encompasses any activities of religious organizations, regardless of whether those activities are religious or secular in nature." *Id.* at 10. In other words, NO Mission argues the Exemption affords protection to religious organizations not only for hiring and firing practices, but also for harassment, discrimination, and retaliation claims, as well as wrongful termination claims. *See id.*

Third, Defendant avers that "secular courts 'are not arbiters of scriptural interpretation.'" *Id.* at 13 (citing *Thomas v. Review Bd. Of Indiana Employment Sec. Div.*, 450 U.S. 707, 716 (1981). Defendant thus contends its interpretation of Plaintiff's documentary is "directly contradictory to [the NO Mission's] Evangelical statement of faith." *Id.* As such, any interpretation of Plaintiff's Catholic scriptural interpretation and the NO Mission's Evangelical interpretation is "outside the province of a secular court to decide." *Id.*

Finally, Defendant requests that if summary judgment is proper in this case, that the court refrain from exercising supplemental jurisdiction over plaintiff's state law employment discrimination and tort law claims. *Id.* at 18.

Plaintiff Scaffidi counters that Defendant NO Mission is not a religious organization within the meaning of the Exemption. *See* Rec. Doc. 52. First, Plaintiff argues that eleven of the sixteen exhibits attached to defendant's motion for summary judgment (Ex. G-P) are inadmissible for purposes of summary judgment. *Id.* at 4. Specifically, Plaintiff claims the inadmissible exhibits consist of "inadmissible photographs, webpages, and other documents presented without any effort to authenticate and otherwise demonstrate the admissibility of such material." *Id.*

4

Second, Plaintiff asserts that NO Mission has failed to demonstrate that it is a religious organization within the meaning of the Exemption. Specifically, Plaintiff argues that NO Mission: (1) is a "faith-based organization" not a religious organization; (2) is not owned or affiliated with a "formally religious entity such as a church or synagogue"; (3) "no formally religious entity participates in the management of the Mission"; (4) the Board of Directors is not comprised of co-religionists; (5) the NO Mission is not supported by a "single, formal religious entity"; (6) it produces a secular product, citing the tax returns that state its purpose as being to "assist the homeless population"; and (7) it has "historically held itself out to the public as both a secular and sectarian entity," noting that NO Mission has sought financial donations without referencing an affiliation with a particular religion. *Id.* at 7-11.

Third, Plaintiff asserts the cases relied upon by the NO Mission are factually distinct. Specifically, plaintiff avers that the cases cited involve "obvious or undisputed" application of the Exemption. *Id.* at 12. As an example, Plaintiff notes that the cited cases analyze a Jewish community center operated by Rabbis, a college where the chief executive officer and directors were all required to be members of Baptist churches, and institutions that were recognized by the IRS and Department of Education as religious organizations. *Id.* at 12-13.

Fourth, Plaintiff alleges that if the Court finds that the Exemption is applicable to the NO Mission, the NO Mission will still not be exempted from "extreme harassment and retaliation on the basis of . . . religion." *Id.* at 16. Specifically, Plaintiff notes the Exemption applies only to employment decisions, not to "repeated, pervasive harassment and personal retaliation." *Id.* In support of this contention, plaintiff argues that Defendant "ignore[s] the factual differences

5

between those cases and the extreme harassment endured by [Plaintiff] Scaffidi in this case." *Id.* at 18.

Finally, plaintiff requests that, in the event this Court finds the Exemption is applicable to the NO Mission, and the Exemption extends to the retaliatory and harassing behavior exhibited by defendant, that it exercise supplemental jurisdiction over plaintiff's state law claims. *Id.* at 24.

## LAW AND ANALYSIS

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also* T*IG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to

6

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Religious Organization Exemptionbuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

**Inadmissible Summary Judgment Evidence.**

FRCP 56(c) outlines acceptable forms of evidence that may be submitted for consideration for motions for summary judgment. Fed. R. Civ. P. 56(c). FRCP 56 states, "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" may be used to support a party's assertion in a motion for summary judgment. *Id*. Plaintiff contends that defendant NO Mission has proffered inadmissible evidence in the form "unauthenticated and inadmissible photographs, webpages, and other documents." Rec. Doc. 52 at 4.

Plaintiff is correct that before 2010, unauthenticated documents were improper evidence offered in support of a motion for summary judgment. However, the Fifth Circuit has since held, in accordance with the 2010 amendment of FRCP 56(c), that "at the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F. 3d 530, 534 (5th Cir. 2016)(emphasis added); *see also Murillo v. Coryell Cty. Tradesmen, LLC*, No. 15-3641, 2017 WL 2780750, at *6 (E.D. La. June 27, 2017)("[F]ollowing a 2010 amendment, summary judgment evidence no longer needs to be authenticated . . ."); *Brown v. Siemens Healthcare Diagnostics, Inc.*, 2012 U.S. Dist. LEXIS 106569 (D. Md. July 31, 2012) (holding the 2010 amendments to Rule 56 made explicit that each document need not be authenticated to be considered as competent summary judgment evidence).

The exhibits presented by Defendant are not authenticated at this stage of the litigation, and they need not be. The photographs included in Defendant's motion for summary judgment, and "other documents," may be authenticated at trial. Thus, the entirety of Defendant's exhibits will be considered for purposes of summary judgment.

**Religious Organization; Title VII**

Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or terminate any individual, or otherwise discriminate against any individual, because of the individual's religion. *See* 42 U.S.C. §2000e-2(a)(1). Further, Title VII also makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice. *See* 42 U.S.C. §2000e-3(a). Title VII also contains

an exemption applicable to religious organizations. *See* 42 U.S.C. §2000e-1(a). The Religious Organization Exemption ("the Exemption") exempts religious organizations from Title VII's prohibition of religious discrimination regarding the employment of an individual. The Exemption states in pertinent part:

> [Title VII] shall not apply to . . . a *religious corporation [or] association* . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

*See id.* (emphasis added).

As noted, the parties vigorously dispute whether NO Mission is a religious organization, thus qualifying for the Exemption. The parties point out that other courts consider several factors to establish whether the defendant-entity is a religious organization and thus entitled to the Exemption. Although not a conclusive list, and not all factors must be met, courts generally considered the following factors: (a) whether the entity is supported and controlled by a religious corporation; (b) whether the entity was founded by sectarian persons or entities; (c) the atmosphere of the entity; (d) the nature of the entity; (e) whether the entity's facilities are decorated with religious images; and (f) whether regular religious ceremonies and practice are observed. *See, e.g.*, *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3rd Cir. 2007); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000); *Killinger v. Samford University*, 11 F.3d 196 (11th Cir. 1997); *Aguillard*, 341 F. Supp. 3d at 642; *Saeemodarae v. Mercy Health Services-Iowa Corp.*, 546 F.Supp.2d 1021 (N.D. Iowa 2006).

In the absence of guidance from the Fifth Circuit, the factors in *Leboon v. Lancaster Jewish*

*Community Center*, provide some guidance for determining whether an institution is a religious organization within the meaning of Title VII. In *Leboon*, the Third Circuit Court of Appeals listed the factors for consideration of whether an institution is a religious organization as follows:

(1)　whether the entity operates for a profit,

(2)　whether it produces a secular product,

(3)　whether the entity's articles of incorporation or other pertinent documents state a religious purpose,

(4)　whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue,

(5)　whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees,

(6)　whether the entity holds itself out to the public as secular or sectarian,

(7)　whether the entity regularly includes prayer or other forms of worship in its activities,

(8)　whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and

(9)　whether its membership is made up by coreligionists.

*Leboon*, 503 F.3d at 226 (citing *Killinger v. Samford University*, 113 F.3d 196 (11th Cir. 1997); *EEOC v. Kamehameha Schools/Bishop Estate*, 990 F.2d 458 (9th Cir. 1993); *EEOC v. Townley Engineering & Mfg. Co.*, 610, 618-19 (9th Cir. 1988); *EEOC v. Mississippi College*, 626

F.2d 477 (5th Cir. 1980)). The *Leboon* court further noted that the determination of whether an organization is covered by the religious organization exemption "cannot be based on its conformity to some preconceived notation of what a religious organization should do, but must be measured with reference to the particular religion identified by the organization," and "not all factors will be relevant in all cases, and the weight given each factor may vary from case to case." *Id.* at 227. Defendant NO Mission asserts it has met a significant number of the *Leboon* factors and should be considered a religious organization within the meaning of Title VII. Evaluating the *Leboon* factors in the light most favorable to the non-movant, this Court disagrees that the issue is ripe for summary judgment, as there remain numerous genuine issues of material fact.

***Leboon* Factors**

First, there appears to be no dispute that NO Mission is a nonprofit 501(c)(3) charitable corporation. *See* Rec. Doc. 51, Exhibit A at ¶ 9; Exhibit E at p. 3; Exhibit F at p. 3. However, this factor is not decisive, but merely prefatory determining whether the entity is a religious organization entitled to the Exemption.

Second, the Court is called upon to determine whether the entity produces a secular product. Defendant contends NO Mission's product is sectarian, rather than secular. Rec. Doc. 51 at 15. In support, Defendant cites the concluding paragraphs from the affidavits of Michael J. Greer[3], Ashton Hardy, Esq.[4], and David Bottner,[5] which are attached to defendant's motion for summary judgment as exhibits A-C. Rec. Doc. 51 Exhibits A-C. The concluding paragraph of each

---

[3] Michael J. Greer – Founder of the NO Mission
[4] Ashton Hardy, Esq. – Prepared the NO Mission's Articles of Incorporation and By-laws.
[5] David Bottner - Current Chief Executive Officer of the NO Mission.

affidavit states:

> [T]he stated reason for [the NO Mission's] existence in its mission statement is: "The New Orleans Mission is about *changing lives and leading people to a loving relationship with Jesus Christ*; besides providing food, clothing, shelter and spiritual guidance to the region's homeless, hurting and hungry, our programs and services are designed to rescue people from homelessness, strengthen the recovery efforts of the people seeking out support, and ultimately foster a successful re-engagement into society as healthy, disciplined, productive individuals who have a renewed passion to lead a sustainable purpose driven life.

*Id.* at Exhibit A ¶ 16; *see also* Exhibits B-C. In opposition, Plaintiff asserts that NO Mission is primarily a shelter and produces a secular product, namely that its mission is to: (1) "assist the homeless population"; (2) "to aid various segments of the homeless population, to rehabilitate alcoholics and drug addicts"; and (3) "educate the public regarding unique needs of the homeless." Rec. Doc. 52 at 10-11 (quoting Exhibit A, Rule 30(b)(6) Deposition of NO Mission at p. 125). Plaintiff argues that NO Mission "not only meets the immediate needs of the community by providing food, clothing, and shelter, but also focuses on the successful and permanent transformation of people's lives." Rec. Doc. 52 at 11. Plaintiff characterizes Defendant "as an emergency resource center focused on finding solutions to homelessness, hunger, addiction, abuse and human trafficking." *Id.*, citing Exhibit B, Continuation of Rule 30(b)(6) Deposition of NO Mission at pp. 27-28. The Court finds, based on the record evidence presented, that there is a genuine issue of material fact as to whether the "product" of NO Mission is secular or sectarian.

Third, the Court must consider whether NO Mission's articles of incorporation or other pertinent document state a religious purpose. The NO Mission's Articles of Incorporation state in pertinent part:

"The nature of the activities to be conducted, and the purpose or purposes to be carried out

12

by the Corporation shall be the following: A. To Operate a street rescue mission . . . D. to *train individuals in Christian Living* . . . F. to Educate the public regarding the *Christian Services of the Mission*. G. To *create channels of Christian Ministry* and service within the public to meet the various needs of the homeless and destitute. H. To *Spread the Gospel of Jesus Christ by every evangelistic means possible.*

Rec. Doc. 51, Exhibit E (emphasis added).

**Fourth,** the Court must consider whether the entity is owned, affiliated with, or financially supported by a formally religious entity such as a church or synagogue. NO Mission concedes that it is not owned or financially supported by a formally religious entity, such as a church or synagogue, and is financially independent of a such organization. Rec. Doc. 51 at 15. However, NO Mission argues that it is a member and affiliated with the Association of Gospel Rescue Missions ("AGRM")[6], which it avers requires members to be "religious organizations." *Id.* at 15-16. The AGRM currently operates under a new name, Citygate Network ("Citygate"). Citygate Network, citygatenetwork.org/agrm/Mission1.asp.[7] The application for Mission membership in Citygate states in pertinent part:

"Organizational membership in Citygate Network is open to missions, agencies, [and] churches . . . that *fully embrace the core of Christian gospel* . . . Inherent in Citygate Network's philosophy is that *complete Christian ministry needs to include a spoken gospel message . . .*, as well as good works that are a manifestation of that message. This is the *single most qualifying practice* that all Citygate Network members share."[8]

---

[6] Defendant contends, through the affidavit of David Bottner (Rec. Doc. 51, Exhibit C) that members of the AGRM must be religious organizations.

[7] "Originally called the Federation of Gospel Missions and then the International Union of Gospel Missions, and until July 2018, the [AGRM], the organization continues to provide a tight network of nurture for those who emotionally expend so much in ministry." Citygatenetwork.org/agrm/Mission1.asp.

[8] CITYGATE NETWORK, https://www.citygatenetwork.org/agrm/Join_Today_M.asp, (emphasis added).

13

Further, the application includes a statement of faith requiring member belief in "one God, eternally existing as Father, Son, and Holy Spirit." *See id.*

Plaintiff asserts the plain language of Section 2000e-1(a) makes clear that the exemption applies only to a religious corporation, association, education institution, or society. Rec. Doc. 52 at 7. Plaintiff points out that, by its own admission in each and every one of NO Mission's tax returns, it is neither identified as a church nor otherwise affiliated with a convention of churches or association of churches. *Id.*, citing Ex, A, NO Mission's 30(b)(6) Deposition, at p. 166. Plaintiff points out that NO Mission is neither managed by nor owned by nor formally affiliated with any formal religious entity.

The Court finds the determination of whether NO Mission is owned, affiliated with, or financially supported by a formally religious entity such as a church or synagogue to be heavily factually dependent. Whether AGRM or Citygate Network is a "formally religious entity" will depend on the testimony and evidence presented at trial, and is an issue better left for a jury to decide rather than this Court.

Fifth, the Court turns to the factor of whether a formally religious entity participates in the management of the entity, such as having representatives on its board of trustees. NO Mission contends its Board of Directors "open and adjourn each meeting with prayer" and are required to give testimony that "he or she is a Biblically born again Christian." Rec. Doc. 51 at 16. Plaintiff argues in opposition that the board is made up of non-coreligionists, including one member who "has been a practicing Catholic for the past 29 years and a member of the Catholic church." Rec. Doc. 52 at 8. In *Leboon*, the court held that local rabbis who played an "advisory role" on the

14

Jewish Center's management and participated in the search for a new executive director satisfied the management factor. *Id.* at 227. Here, Defendant offers no evidence, other than prayer at the beginning and end of board meetings and the required testimony regarding each board member's Evangelical Christian faith, to rebut Plaintiff's contention that the management of the NO Mission was not conducted by a formally religious entity. Rec. Doc. 51 at 16. Based on this evidence, the Court finds the issue of whether a formally religious entity participates in the management of NO Mission to be both material and contested.

Sixth, *Leboon* instructs the Court to consider whether the entity holds itself out to the public as secular or sectarian. Defendant contends it "clearly holds itself out to the public as sectarian on its website, www.neworleansmission.org, and its weekly radio show on WWL 870 AM radio." *Id.* citing Exhibit C. Plaintiff points out, however, that NO Mission has historically held itself out to the public as sectarian *and* secular. Rec. Doc. 52 at 11. Plaintiff notes NO Mission recently changed its logo in 2015 to exclude the image of a sun and cross in exchange for a heart and a jazz musician to "'to a better job of branding' the organization and to emphasize the Mission's primary goals of 'rescue, recovery, and reengagement.'" *Id.* at 12.

In the deposition of David Bottner, attached to Plaintiff's opposition as Exhibit A, Mr. Bottner notes that in order to "do a better job at branding" the marketing company[9] "came up with these three words to me: Rescue, recovery, reengagement." Rec. Doc. 52 at Exhibit A at p. 250. Further, Mr. Bottner stated, "Chad had helped me come up with the logo because we felt like the

---

[9] The marketing company in question is located in Michigan and called The Timothy Group. *See* Rec. Doc. 52 Exhibit A, at 250.

Mission needed to do a better job of explaining that we weren't just feeding people, that people's lives were changing . . ." *Id.*

Plaintiff acknowledges that at times "[NO] Mission sends appeals for donations or that certain financial solicitations reference the Bible or Jesus Christ." Rec. Doc. 52 at 11. However, Plaintiff contends that NO Mission "regularly solicits financial support . . . without referencing any affiliation to a particular religion or any faith-based reasoning." *Id.* In support, Plaintiff points to the "Donate" page on the NO Mission's website, which includes no mention of a religious affiliation, and encourages donations to help "hurting men and women . . . strength to recover from their brokenness and the courage to begin the process of rebuilding a shattered life." Rec. Doc. 52, Exhibit B, Exhibit 23. The Court finds the issue of whether NO Mission holds itself out to the public as secular or sectarian is genuinely disputed, and requires a determination of credibility of witnesses and the weight to attribute to the testimony of such witnesses.

Seventh, Defendant states that it regularly includes prayer and other forms of worship in its activities. Rec. Doc. 51 at 16. Specifically, Defendant avers there are weekly Bible studies, sixteen (16) chapel services per week, and regular baptisms, which take place on the NO Mission premises. Rec. Doc. 51 at 16.

Eighth, the religious instruction factor is not applicable to the current factual situation. "Whether [an entity] includes religious instruction in its curriculum" is based on the extent to which the entity is an educational institution. *Leboon*, 503 F. 3d at 226. NO Mission is not an educational institution, despite the discipleship, quarterly Heart training, and Desperate Reality programs that defendant offers as examples of its Christian teachings and curriculum.

Ninth, the Court next looks to whether the membership of the entity is made up by coreligionists. Defendant avers that NO Mission employees, with the exception of Plaintiff, and Board members all adhere to a statement of faith, which is allegedly required for employment within the NO Mission. Rec. Doc. 51 at 17. However, Plaintiff has pointed to evidence that rebuts this statement. Specifically, the deposition testimony of Troy Villafarra, who states he has been a practicing Catholic since his marriage, approximately twenty-nine (29) years ago. Rec. Doc. 52 at 8, Exhibit F at p. 25-26. Thus, whether NO Mission's membership is made of coreligionists is genuinely disputed.

In sum, the Court finds the summary judgment evidence does not demonstrate that NO Mission has established a majority of the *Leboon* factors and that it is a religious organization within the meaning of the Exemption. Accordingly, because there remain genuine issues of material fact as to whether Defendant is a religious organization so as to invoke the Exemption, Defendant is not entitled to summary judgment in its favor.

## CONCLUSION

For these reasons, Defendant New Orleans Mission, Inc.'s Motion for Summary Judgment (Rec. Doc. 51) is **DENIED**.

New Orleans, Louisiana, this 31st day of March 2020.

*[Signature]*

———————————————
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE